*488 OPINION OF THE COURT
Robert G. Main, Jr., J.
Petitioner, Barbara A. Hawes, Director of Sunmount Developmental Disabilities Services Office, filed an application with the Franklin County Clerk on June 3, 2003, ¡seeking the involuntary retention of the above-named resident for a period not to exceed two years.
Respondent is currently confined at Sunmount. He was originally admitted, on a voluntary basis, pursuant to the terms and conditions of a five-year probationary sentence imposed in Albany County on January 9, 1995. Thereafter, respondent was retained, pursuant to Mental Hygiene Law §§ 15.13 and 15.33, for a 60-day period pursuant to an order signed by this court on November 20, 2000. Two subsequent orders of retention followed. The first was dated January 23/ 2001, for a period of 9 months, and the second was dated December 17, 2001, for a period not to exceed 20 months.
Respondent requested a hearing on the current application, and the matter, having been transferred to Supreme Court to facilitate the assignment of a judge or justice, was initially heard on July 22, 2003, by the Honorable Jaimes E Dawson. At the time of the scheduled hearing, the parties advised the court that they desired an adjournment in order to address the issue of whether respondent could, at the direction of the court, be transferred to the care and custody of his legal guardians, his parents, pursuant to Mental Hygiene Law § 15.31 (c). This court deems such to be a motion by respondent on the issue of whether the provision with regard to the care and custody of relatives found in Mental Hygiene Law § 15.31 (c) is also applicable to a subsequent involuntary retention proceeding pursuant to Mental Hygiene Law § 15.33. Judge Dawson directed counsel to submit memoranda of law on the issue. Counsel for both petitioner and respondent submitted memoranda, and the matter was returned to County Court and scheduled for oral argument on this narrow issue on August 8, 2003.
The court heard counsel’s arguments and posed several questions to counsel at the same time. In addition, the court has read the memoranda of law and researched the issue further. Based upon that research, the court finds that petitioner is correct in stating that no reported case law exists on this point. It is, apparently, a case of first impression. In addition, a search for legislative history proved unhelpful, as the Legislature has *489 not provided any type of insight or guidance on this particular issue.
In weighing all of the submissions and argument, this court finds respondent’s argument to be more persuasive and concludes that the provision for transfer to relatives found in Mental Hygiene Law § 15.31 (c) is applicable to a subsequent application for retention pursuant to Mental Hygiene Law § 15.33.
Mental Hygiene Law § 15.33 (d), the provision applicable to this proceeding, provides, in part, that “[t]he procedures for obtaining any order pursuant to this subdivision shall be in accordance with the provisions of the foregoing subdivisions of this section[.]”
In turn, one of the foregoing subdivisions, Mental Hygiene Law § 15.33 (c), provides that
“[u]pon the demand of the resident . . . the court shall, or may on its own motion, fix a date for the hearing of the application, in like manner as is provided for hearings in section 15.31. The provisions of such section shall apply to the procedure for obtaining and holding a hearing and to the granting or refusal to grant an order of retention by the court, except that the resident shall not have the right to designate initially the county in which the hearing shall be held.”
Turning to Mental Hygiene Law § 15.31, which applies to an involuntary admission on medical certification, more commonly known as a “2PC” or “two physicians’ certificate” admission, subdivision (c) provides, in part, that
“[i]f it appears that the relatives of the resident or a committee of his person are willing and able properly to care for him at some place other than a school, then, upon their written consent, the court may order the transfer of the resident to the care and custody of such relatives or such committee.”
Petitioner argues for a narrow reading of the applicability of Mental Hygiene Law § 15.31 (c) and stresses, in his letter memorandum, that “the references in MHL § 15.33 (c) to MHL § 15.31 refer only to the procedures for making the substantive determinations laid out in these respective sections of the MHL” (petitioner’s letter mem, Aug. 4, 2003, at 7). Respondent, obviously, does not agree with this argument and interprets the language differently.
*490 Both parties further interpret the statute, albeit differently. Petitioner argues that Mental Hygiene Law § 15.31 (f), which addresses the confidentiality of records, is, by its very terms, applicable to all proceedings under article 15 and, in contrast, Mental Hygiene Law § 15.31 (c) is not, by its own terms, applicable to proceedings under Mental Hygiene Law § 15.33 (d) (petitioner’s letter mem, Aug. 4, 2003, at 6). Because the Legislature chose not to specifically make the language in Mental Hygiene Law § 15.31 (c) applicable to Mental Hygiene Law § 15.33, petitioner argues, it cannot so apply.
Respondent, on the other hand, interprets the statute from an entirely different perspective. He argües in his memorandum of law that !
“[i]n the absence of any explicit language in Mental Hygiene Law § 15.33 stating that the court is without the authority to transfer the resident of a. school to the care and custody of his relatives in the context of a Mental Hygiene Law § 15.33 retention hearing, we can safely assume that the legislature intended that provision of Mental Hygiene Law § 15.31 (c) [sic] to be applicable to subsequent retention proceedings” (respondent’s mem, Aug. 5, 2003, at 4).
Faced with a decision of what the Legislature did or did not intend by their omission of more exact! and precise language, the court turns to the public policy considerations involved in the involuntary retention of the mentally retarded. These considerations are most persuasive in reaching a determination of this issue. Respondent’s memorandum of law argues that “[a]s a matter of public policy, residents in need of retention should be retained in the least restrictive setting suitable to the level of care that is needed” (respondent’s mem at 5). As further proof of this, counsel cites Mental Hygiene Law § 15.27 (d) which provides, in part, that “[b]efore an examining physician or certified psychologist completes the certificate of examination of a person for involuntary care and treatment, he shall consider alternative forms of care and treatment that might be adequate to provide for the person’s needs without requiring involuntary care and treatment” (respondent’s mem (at 5).
The court cannot help but see logic in ¡counsel's further statement that “it is fair to assume that this public policy sentiment is an overarching principle that applies tjo the restrictiveness of the environment in which the residént will be retained” *491 (respondent’s mem at 6). This court does not see the policy of desiring to place a resident in the least restrictive setting as vanishing once the resident has already been involuntarily retained. If family members are willing and able to properly care for a resident who has, in this instance, already been retained for a 60-day period, 9-month period and most recently a 20-month period, this court can see no reason not to allow it.
Counsel for petitioner argues that the option of placing a resident with family only makes sense in the case of a person newly admitted to a facility because, in the case of a resident already retained, whether voluntarily or by retention order, “it will be incumbent upon the school itself to evaluate a variety of less restrictive placements and to provide testimony to the court regarding such consideration in presenting its case for court-authorized further retention” (petitioner’s letter mem at 8). The court is not persuaded by this argument.
It appears inherently unfair to take the position that a resident, and his or her family, should be penalized because the family, for whatever reason, failed to be properly willing and able to care for the resident at the time of the initial challenge to a 2PC admission pursuant to Mental Hygiene Law § 15.31. If the statute were to be so construed, residents would only be given this one bite at the apple. In this instance, it seems even more unreasonable, given the fact that this respondent, based upon his entrance to Sunmount as a voluntary resident, was never, and never will, be retained pursuant to Mental Hygiene Law § 15.31. As a result, this respondent, and many others who enter the doors of Sunmount voluntarily, would never even be allowed that one bite at the apple.
One other issue has arisen in this matter. In a letter to the court dated August 5, 2003 counsel for respondent stated that it was his belief that, at the July 22, 2003, appearance before Judge Dawson, he advised the court that respondent would stipulate that he was in need of further retention only if the court determined that Mental Hygiene Law § 15.31 (c) is applicable to the instant proceeding. Counsel for petitioner, in a letter to the court dated August 7, 2003, advised that he did not recall respondent’s stipulation to be conditioned upon such a finding. Given the court’s decision in this matter, this issue is moot.
For the reasons set forth above, it is hereby ordered that respondent’s motion be, and the same hereby is, granted; and it *492 is further adjudged that the provisions of Mental Hygiene Law § 15.31 (c), relating to placement with ¡relatives, apply to this application for an involuntary retention pursuant to Mental Hygiene Law § 15.33 (d).